UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Leigh Richards

    v.                                            Civil No. 12-cv-041-LM
                                                    Opinion No. 2013 DNH 032

Hudson School District


**O R D E R**

Pursuant to 20 U.S.C. § 1415(i)(2)(A), a provision of the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1499, Leigh Richards challenges an administrative decision that the Hudson School District ("HSD") is not obliged to reimburse the costs she incurred as a result of unilaterally placing her daughter in a private school, Learning Skills Academy ("LSA"), at the start of the 2011-2012 school year. Specifically, plaintiff asks the court to order HSD to fully fund her daughter's placement at LSA. For the reasons that follow, the court declines to do so.

**Standard of Review**

In its bellwether opinion on the statute now known as IDEA, the United States Supreme Court explained:

> [A] court's inquiry in suits brought under [IDEA] is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program [IEP] developed

through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982) (footnotes omitted). This case involves only the second of the two Rowley questions.

As for the standard that applies to judicial review of an administrative decision in an IDEA case:

> [A] district court reviews the administrative record . . . and makes an independent ruling based on the preponderance of the evidence." [Lt. T.B. ex rel. N.B. v. Warwick Sch. Comm., 361 F.3d 80, 83 (1st Cir. 2004)] (internal quotation marks omitted). However, "[t]hat independence is tempered by the requirement that the court give due weight to the hearing officer's findings." Id. (internal quotation marks omitted). As a result, a district court's review "falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard." Lessard [v. Wilton-Lyndeborough Coop. Sch. Dist.], 518 F.3d [18,] 24 [(1st Cir. 2008)]. We have characterized this intermediate level of review as "one of involved oversight." Lenn [v. Portland Sch. Comm.], 998 F.2d [1083,] 1087 [(1st Cir. 1993)] (internal quotation marks omitted).

D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 35-36 (1st Cir. 2012). Stated another way, "in an IDEA case, a district court 'essentially conduct[s] a bench trial based on a stipulated record,' but must nevertheless give due deference to the findings of the administrative hearing officer." Sebastian M. v. King Philip Reg'l Sch. Dist., 685 F.3d 79, 85 (1st Cir.

through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982) (footnotes omitted). This case involves only the second of the two Rowley questions.

As for the standard that applies to judicial review of an administrative decision in an IDEA case:

> [A] district court reviews the administrative record . . . and makes an independent ruling based on the preponderance of the evidence." [Lt. T.B. ex rel. N.B. v. Warwick Sch. Comm., 361 F.3d 80, 83 (1st Cir. 2004)] (internal quotation marks omitted). However, "[t]hat independence is tempered by the requirement that the court give due weight to the hearing officer's findings." Id. (internal quotation marks omitted). As a result, a district court's review "falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard." Lessard [v. Wilton-Lyndeborough Coop. Sch. Dist.], 518 F.3d [18,] 24 [(1st Cir. 2008)]. We have characterized this intermediate level of review as "one of involved oversight." Lenn [v. Portland Sch. Comm.], 998 F.2d [1083,] 1087 [(1st Cir. 1993)] (internal quotation marks omitted).

D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 35-36 (1st Cir. 2012). Stated another way, "in an IDEA case, a district court 'essentially conduct[s] a bench trial based on a stipulated record,' but must nevertheless give due deference to the findings of the administrative hearing officer." Sebastian M. v. King Philip Reg'l Sch. Dist., 685 F.3d 79, 85 (1st Cir.

2012) (quoting Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1472 (9th Cir. 1993)). The "intermediate level of review [described above] reflects the concern that courts not substitute their own notions of educational policy for that of the state agency, which has greater expertise in the educational arena." Lt. T.B., 361 F.3d at 83-84 (citation omitted); see also Lessard, 518 F.3d at 24.

Finally, in an action brought under 20 U.S.C. § 1415(i)(2)(A), the burden of proof rests with the party challenging the decision of the hearing officer. See Sch. Union No. 37 v. Ms. C., 518 F.3d 31, 35 (1st Cir. 2008) (citing Hampton Sch. Dist. v. Dobrowolski, 976 F.2d 48, 54 (1st Cir. 1992)); Roland M. v. Concord Sch. Comm., 910 F.2d 983, 991 (1st Cir. 1990) (citations omitted).

## Background

The court begins by noting that "Plaintiff does not dispute the hearing officer's factual findings." Pl.'s Decision Mem. (doc. no. 38) 3; see also Pl.'s Reply (doc. no. 41) 1 ("the Plaintiff does not dispute the HO's factual findings in this appeal"). The brief description of the factual background of this case that follows is drawn largely from those findings.

Plaintiff's daughter (hereinafter "the student") is coded for special-education eligibility based upon a seizure disorder, and she has a secondary coding for speech and language impairment. From the first through the fifth grade, the student attended HSD's Nottingham West Elementary School ("Nottingham West"), and she completed sixth grade, which was her first year of middle school, at HSD's Hudson Memorial School ("Hudson Memorial"). Shortly before the start of the student's seventh-grade year at Hudson Memorial, her parents withdrew her from that school, and enrolled her in LSA.

During her years at Nottingham West and Hudson Memorial, the student always had an IEP. From the third grade through the sixth, her IEP included two hours per day of instruction at the Reading Foundation, which is located off campus, in Amherst, New Hampshire. For the student's sixth-grade year, her first at Hudson Memorial, instruction at the Reading Foundation was included in her IEP at the urging of her parents. HSD had recommended reading instruction at Hudson Memorial, an arrangement that, in its view, would eliminate the disruption imposed upon the student by a daily commute from Hudson to Amherst during the school day.

On June 17, 2011, the student's IEP team held a meeting to review a proposed draft IEP for the student's seventh-grade

year.  At that meeting, plaintiff said she would contact HSD by e-mail to communicate her concerns with the draft, but she never did so.  A week later, on June 23, HSD convened a second team meeting to review proposed changes to the IEP.  At that meeting, the team also discussed the results of an independent evaluation of the student conducted by Dr. Susan Brefach.  Dr. Brefach, in turn, made recommendations concerning the student's educational program, and HSD embraced all but one of them, a recommendation that the student be placed in a special-education school using a language-based curriculum across all subject areas, with classes of no more than eight students composed of peers with similar academic potential and achievement.

At the conclusion of the June 23 meeting, HSD agreed to revise the student's IEP along the lines discussed at that meeting and to send the student's parents a copy of the revised IEP.  A revised IEP was sent to the parents on August 3.[1]  On August 16, an educational advocate retained by the parents requested various clarifications to the IEP.

---

[1] Among other things, the August 3 IEP provided that the student would receive reading instruction at Hudson Memorial rather than off campus, at the Reading Foundation.

On August 19, HSD revised the IEP,[2] and sent the student's parents a copy of the new version. With regard to the August 19 IEP, which the parties stipulated to be the operative IEP in this case, see Administrative R. ("AR") 1213-14, the Hearing Officer made the following relevant findings of fact, which plaintiff does not contest:

- The Parents did not identify any aspect of the [2011-2012] IEP's goals and objectives to which they disagreed, after being requested to do so during [a] resolution session.

- The August 19, 2011 IEP is reasonably calculated to enable the Student to benefit from her education.

- The IEP incorporates many of the interventions and strategies recommended by school psychologist [Amy] Bahan in her evaluation, which are appropriate.

- The IEP includes many of the recommendations and strategies made by Dr. Brefach.

- The August 19, 2011 IEP can be effectively delivered at Hudson Memorial School.

AR 1766; see also AR 1778 (adopting those findings of fact). In addition, the Hearing Officer made subsidiary findings concerning the benefits that were likely to result from the IEP's specification that the student would receive reading

---

[2] The IEP was revised to specify that the student's reading instruction at Hudson Memorial would follow the same format as the instruction she had been receiving at the Reading Foundation.

6

instruction at Hudson Memorial rather than at the Reading Foundation.

Also on August 19, HSD received a letter from the parents' attorney stating that the parents were rejecting the IEP and enrolling the student in LSA. To their letter, they attached a due process hearing complaint. That complaint resulted in the administrative decision the parents now challenge.

In that decision, the Hearing Officer characterized the case as "a request for reimbursement for a unilateral placement." AR 1776. He began his decision by noting that he could not order reimbursement unless the student's parents established that: (1) HSD did not provide the student with a free appropriate public education ("FAPE"); and (2) their unilateral placement was appropriate. See id. The Hearing Officer went on to say:

> I agree that based on the evidence, the student's progress has not been meaningful or significant and that the student appears capable of achieving better results in an integrated, language based program such as the one offered by the unilateral placement [at LSA].
>
> However, the First Circuit has rejected the meaningful benefit standard and continues to use the "some educational benefit" standard. See e.g. Lessard v. Wilton Lyndeborough Coop. School Dist., 518 F.3d 18 22-23 (1st Cir. 2008). While a federal district court in Massachusetts apparently used the "meaningful benefit" standard after Lessard, see Dracut School Committee v. Bureau of Special Educ. Appeals of the Massachusetts Dept. of Elementary and Secondary Educ.,

> 737 F. Supp. 2d 35, 51 (D. Mass. 2010), the federal district court in New Hampshire has not. See Burke v. Amherst School Dist., 2008 WL 5382270 at *8 n.2 (D.N.H. 2008).
>
> . . . .
>
> As a hearing officer, I am bound to follow the New Hampshire District Court and First Circuit's interpretation of the law. Under the "some benefit" standard utilized by the First Circuit and New Hampshire District court, the fact that the student is capable of doing better, or making more meaningful progress at a private unilateral placement is not something I can consider. Rather, the legal analysis that I am constrained to follow is simply whether the programs and services provided or offered by the school provide "some benefit" which means "some" amount of progress.
>
> Here the school presented documentary evidence and live witness testimony that the student has made "slow and steady" progress in areas affected by her disabilities such as reading, writing, math, and social skills. Under the some education benefit standard, as interpreted by the First Circuit and the New Hampshire District court, that level of progress is sufficient to meet the legal obligations under the IDEA. See e.g. Burke v. Amherst School Dist., 2008 WL 5382270 at *8 (noting the student's steady progress sufficient to provide FAPE).

AR 1776-77. Based upon the foregoing, the Hearing Officer concluded: "I find that the parents did not prove that the school district failed to offer the student [a] FAPE and because of that I am unable to order reimbursement." Id. at 1177.

### Discussion

Plaintiff argues that the Hearing Officer committed two errors of law that require this court to reverse his

8

determination that she and her husband did not prove that HSD failed to provide the student with a FAPE. Specifically, she argues that the Hearing Officer erred by: (1) finding that "the student's progress has not been meaningful or significant" but ruling that HSD had provided her with a FAPE because her education at Nottingham West and Hudson Memorial had provided her with some benefit; and (2) ruling that "the fact that the student is capable of doing better, or making more meaningful progress at a private unilateral placement [was] not something [he could] consider." In its decision memorandum, HSD argues that: (1) it provided the student with a FAPE; (2) LSA is not a proper placement for the student; and (3) the student's parents failed to give the notice required by IDEA before they removed the student from Hudson Memorial and enrolled her in LSA. HSD's first argument is meritorious, and dispositive.

The court begins by noting an incongruity between the parties' arguments. HSD supports its argument that it provided the student a FAPE with three sub-arguments: (a) the student benefitted from her sixth-grade education at Hudson Memorial; (b) the proposed IEP for her seventh-grade year was appropriate; and (c) the seventh-grade IEP could be appropriately implemented at Hudson Memorial. Plaintiff, however, addresses only the issue of her daughter's academic progress at Nottingham West and

9

Hudson Memorial, arguing that once the Hearing Officer found that her progress had not been "meaningful or significant," he was obligated to find that HSD had failed to provide her with a FAPE. In plaintiff's view, "the entire case hinged" on that purported error of law and, as a consequence, plaintiff says nearly nothing about the proposed seventh-grade IEP and whether it was sufficient to provide the student with a FAPE.[3]

Plaintiff's argument raises an interesting and complex legal question concerning the standard that prevails in the First Circuit for determining whether an IEP is sufficient to deliver a FAPE. But, the undisputed facts, viewed in light of the relevant law, both allow the court to resolve this case without addressing that issue and compel the court to affirm the decision of the Hearing Officer.

"[A] state receiving federal funding under the IDEA must offer a FAPE to every disabled child within its jurisdiction." Esposito, 675 F.3d at 34 (citing 20 U.S.C. § 1412(a)(1)(A)). "If a school system is unable to furnish a disabled child with a

---

[3] What plaintiff does say about the proposed seventh-grade IEP appears in a footnote in her reply to HSD's decision memorandum. Specifically, she says: "It should also be noted that, regarding the programs and services provided and offered by HSD, Student's special education teacher from HSD, Michelle Korsak, testified via affidavit that, 'The IEP services are very similar to her previous IEP, but again with the reading component delivered here on site'." Pl.'s Reply (doc. no. 41) 2-3 n.1.

FAPE through a public school placement, it <u>may</u> be obliged to subsidize the child in a private program." <u>Esposito</u>, 675 F.3d at 34 (quoting <u>C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.</u>, 513 F.3d 279, 285 (1st Cir. 2008)) (emphasis added).  Where, as here,

> the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer <u>may</u> require the agency to reimburse the parents for the cost of that enrollment <u>if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment</u>.

20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added).  As the United States Supreme Court has recently explained, "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." <u>Forest Grove Sch. Dist. v. T.A.</u>, 557 U.S. 230, 247 (2009) (quoting <u>Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter</u>, 510 U.S. 7, 15 (1993)) (internal quotation marks omitted).

    More specifically, the Court has read the predecessor to the current IDEA remedy provision "as empowering a court 'to order school authorities to reimburse parents for their expenditures on private special education for a child if the

court ultimately determines that such placement, <u>rather than a proposed IEP</u>, is proper under the Act.'" <u>Mr. I. ex rel. L.E. v. Me. Sch. Admin. Dist. No. 55</u>, 480 F.3d 1, 23 (1st Cir. 2007) (quoting <u>Sch. Comm. of Burlington v. Dep't of Educ.</u>, 471 U.S. 359, 369 (1985)) (emphasis added). In accordance with the holding in <u>Burlington</u>, "parents 'are entitled to reimbursement <u>only</u> if a federal court concludes <u>both</u> that the public placement violated IDEA and that the private school placement was proper under the Act.'" <u>Mr. I.</u>, 480 F.3d at 23 (quoting <u>Florence Cnty. Sch. Dist.</u>, 510 U.S. at 15) (emphasis added). Finally, "even if the Court concludes that a child was denied a FAPE, the cost of reimbursement may be reduced or denied '[u]pon a judicial finding of unreasonableness with respect to actions taken by the parents.'" <u>Maynard v. Dist. of Columbia</u>, 701 F. Supp. 2d 116, 123 (D.D.C. 2010) (quoting 34 C.F.R. § 300.148(d)(3)).

To prevail in this case, plaintiff bears the burden of proving that the student's placement at Hudson Memorial for seventh grade would have violated IDEA because her proposed IEP would not have provided her with a FAPE. Plaintiff attempts to carry her burden by identifying a purported error of law in the Hearing Officer's determination that the student had received a FAPE when she was in the sixth grade, but, just as the student's parents never informed HSD of any specific deficiencies in the

proposed seventh-grade IEP,[4] plaintiff does not address that IEP in this proceeding. That is fatal to her claim.

Under Rowley, a school district meets its obligations under IDEA if "the individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." 458 U.S. at 206-07. Here, based upon plaintiff's acceptance of the Hearing Officer's factfinding, it is undisputed that the IEP proposed for the student's seventh-grade year was "reasonably calculated to enable [her] to benefit from her education," AR 1766, and that the proposed IEP could "be effectively delivered at Hudson Memorial School," id. Thus, this case is analogous to a recent case from the Eastern District of Pennsylvania in which Judge Giles denied a request for tuition reimbursement for the 2005-2006 school year, after a unilateral placement, based upon his determination that "the IEP [the school district] created for

---

[4] With regard to the seventh-grade IEP, after failing to notify HSD of any claimed deficiencies, the parents rejected that IEP in their letter of August 19, 2011, but have since conceded that it was reasonably calculated to enable the student to benefit from her education at Hudson Memorial. Thus, to whatever extent plaintiff may believe that the seventh-grade IEP was so similar to the sixth-grade IEP that the Hearing Officer's purportedly erroneous determination that the student had received a FAPE in the sixth grade somehow precludes a determination that her seventh-grade IEP would have provided her with a FAPE, see Pl.'s Reply (doc. no. 41) 2-3 n.1, plaintiff has waived any such argument by expressly conceding the adequacy of the seventh-grade IEP.

[the student] for the 2005-06 school year met the IDEA standards." P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist., 557 F. Supp. 2d 648, 668 (E.D. Pa. 2008), rev'd on other grounds, 585 F.3d 727 (3d Cir. 2009); see also E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist., 742 F. Supp. 2d 417, 445-46 (S.D.N.Y. 2010) (denying reimbursement for school year for which IEP did provide a FAPE, granting reimbursement for school year for which IEP did not provide a FAPE).

Because plaintiff concedes that the student's seventh-grade IEP was reasonably calculated to enable her to benefit from education at Hudson Memorial, there is no basis for a determination that public placement under that IEP would violate IDEA. See Rowley, 458 U.S. at 206-07. Without such a determination, there is no basis for ordering HSD to reimburse plaintiff for the cost of sending her daughter to LSA. See Esposito, 675 F.3d at 34; Mr. I., 480 F.3d at 23.

The court concludes by circling back to its earlier observation concerning the way plaintiff has framed her claim and her exclusive focus on the Hearing Officer's purported error of law. There is room for a legitimate argument over the Hearing Officer's construction of Lessard. But, in the face of the Hearing Officer's factual finding that the student's seventh-grade IEP was reasonably calculated to enable her to

benefit from her education, HSD would be entitled to judgment in its favor even if plaintiff were entirely correct in her argument that the Hearing Officer used the wrong standard to determine the legal significance of the student's performance under previous IEPs. That is why the court has not addressed the Hearing Officer's use of the "some educational benefit" standard despite plaintiff's exclusive focus on that single issue.

## Conclusion

For the reasons detailed above, plaintiff is not entitled to reimbursement for the costs she incurred in sending her daughter to LSA. The November 3, 2011, decision of the Hearing Officer is affirmed. The clerk of court shall enter judgment in favor of defendant and close the case.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

March 12, 2013

cc: Stephen C. Buckley, Esq.
    Lynmarie C. Cusack, Esq.
    Erin R. Feltes, Esq.
    Sean T. Goguen, Esq.
    Jeanne M. Kincaid, Esq.